UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOE HAND PROMOTIONS, INC.,      :
                                :     HONORABLE JOSEPH E. IRENAS
            Plaintiff,          :
                                :     CIVIL ACTION NO. 08-1833 (JEI)
      v.                        :
                                :
TAYLOR L. MILLS, et. al.,       :            **OPINION**
                                :
            Defendants.         :

**APPEARANCES:**

LONSTEIN LAW OFFICE, P.C.
WAYNE D. LONSTEIN
1 Terrace Hill
P.O. Box 351
Ellenville, NY 12428
        Counsel for Plaintiff

LAW OFFICES OF IGOR STURM
WILLIAM C. MACMILLAN
101 Hopkins Avenue
P.O. Box 162
Haddonfield, NJ 08033
        Counsel for Defendants

**IRENAS**, Senior District Judge:

        This case began with Plaintiff Joe Hand Promotions, Inc.'s

("Joe Hand") Complaint against Defendants Taylor L. Mills and

Taylor's Sports Bar, Grill & Dance Club[1] (collectively,

"Taylor's").  Joe Hand asserts that on January 19, 2008, Taylor's

showed to its patrons television program "UFC #80" without

purchasing the right to do so from Joe Hand.  Joe Hand allegedly

---

        [1]  Defendants assert that the correct name is "Taylor's
Grill & Bar of Cherry Hill, Inc."

holds the exclusive right to distribute the program.[2]

Taylor's asserts two counterclaims: violation of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("CFA") and common law fraud.[3]  Those claims arise out of the events that took place immediately preceding the initiation of Joe Hand's suit.  Joe Hand presently moves to dismiss the counterclaims pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons stated herein, the Motion will be granted.


**I.**

On February 15, 2008, Taylor's received a letter from Joe Hand's attorney wherein Joe Hand accused Taylor's of violating Joe Hand's exclusive licensing rights by exhibiting UFC #80 on January 19, 2008.  (Answer at 6, ¶¶ 7-8.)  The letter states Joe Hand's intention to sue Taylor's in federal court, explaining, "[i]n this litigation we will be seeking maximum statutory damages . . . which may exceed $110,000.00. . . . This Amount does not include interest and attorneys fees."  (Taylor Cert. Ex. A.)  The letter goes on to offer settlement as an alternative to litigation, but cautions that if Taylor's does not respond within

---

[2]  The Complaint alleges violation of either 47 U.S.C. § 605 or § 553.  This Court has subject matter jurisdiction over the Complaint pursuant to 28 U.S.C. § 1331.

[3]  The Court has supplemental subject matter jurisdiction over the Counterclaims pursuant to 28 U.S.C. § 1367.

2

14 days, Joe Hand will "commence[] legal action . . . without further notice to you."  (Id.)

Taylor's allegedly responded, through their attorney, by letter dated February 26, 2008 ("February 26th letter"). Taylor's stated that it purchased UFC #80 from Satellite Sales, L.L.C. ("Satellite Sales") and "Direct TV."[4]  (Answer at 6, ¶ 9.) According to Taylor's, it "lawfully obtained the subject program through Satellite Sales, L.L.C., and Direct TV" which it asserts are agents or apparent agents for Joe Hand.  (Answer at 5, ¶¶ 2-3; 6, ¶¶ 10-11; 7, ¶ 14.)  Thus, Taylor's asserts that it did not infringe Joe Hand's rights or violate federal law.

Despite the response from Taylor's, Joe Hand filed the Complaint on April 15, 2008.  Taylor's asserts that Joe Hand filed the Complaint in disregard of the information contained in the February 26th letter.  Taylor's further claims that Joe Hand "failed to conduct any investigation into the actions of Direct TV and its agents prior to initiating the suit."  (Answer at 6, ¶ 13.)

Based on the theory that Joe Hand knowingly threatened Taylor's with a federal lawsuit in an "attempt[] to obtain monies

---

[4]  Taylor's asserts third-party claims against Satellite Sales and its alleged agent, Vincent Cottrell.  "Direct TV" is not a party to this suit.  It is unclear whether "Direct TV" refers to DirecTV, Inc. ("DirecTV"), a national satellite television provider, see http://www.directv.com, or a local DirecTV retailer operating under the name "Direct TV."

from the defendants which plaintiff knows defendants are not lawfully required to pay and monies which plaintiff knows it is not lawfully entitled to receive," (Answer at 6, ¶ 12.), Taylor's asserts two claims: violation of New Jersey's Consumer Fraud Act (Counterclaim 1), and common law legal and equitable fraud (Counterclaim 2).  Joe Hand moves to dismiss the counterclaims for failure to state a claim upon which relief may be granted.

## II.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering a 12(b)(6) motion, the court will "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 233, 2008 U.S. App. LEXIS 2513 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In order to survive a 12(b)(6) motion, the plaintiff's "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* at 232 (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 & n.3, 167 L. Ed. 2d 929,

2007 U.S. LEXIS 5901 (2007)).  In sum, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element."  *Id.* at 234 (quoting *Twombly*, 127 S. Ct. at 1965).

A party alleging fraud "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  A plaintiff must "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'"  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)).  Plaintiffs can satisfy the requirements of Rule 9(b) by "pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"  *Lum*, 361 F.3d at 224 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791, 1984 U.S. App. LEXIS 18846 (3d Cir. 1984)).  A plaintiff must also "allege who made a representation to whom and the general content of the misrepresentation."  *Id.*  The heightened pleading standards of Rule 9(b) apply to claims of fraud brought under New Jersey law.  *Frederico*, 507 F.3d at 200.

**III.**

**A.**

Taylor's claims that Joe Hand violated the CFA by selling to Taylor's, through its alleged agents, UFC #80, and then attempting to intimidate Taylor's into paying money to Joe Hand, ostensibly to settle what Joe Hand knew to be a meritless claim arising out of the broadcast of the program at Taylor's.  Joe Hand argues that the allegations of the Counterclaim are insufficient as a matter of law.  The Court agrees because the CFA does not apply to the factual scenario alleged.

The CFA prohibits

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation . . . *in connection with* the sale or advertisement of any merchandise or real estate . . . .

N.J.S.A. 56:8-2 (emphasis added).  As the New Jersey Supreme Court has explained, "[t]he Consumer Fraud Act, originally enacted in 1960, is aimed basically at unlawful sales and advertising practices *designed to induce consumers to purchase merchandise or real estate.*"  *Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267, 270 (1978)(emphasis added).  The Court continued, "the legislative concern was over sharp practices and dealings *in the marketing of* merchandise and real estate whereby the consumer could be victimized *by being lured into a purchase* through fraudulent, deceptive or other similar kind of selling or

advertising practices. *Id.* at 271 (emphasis added).[5]

The counterclaim's allegations make clear that Joe Hand's allegedly fraudulent conduct, embodied in the February 15th letter,[6] did not induce Taylor's to purchase anything.  Instead,

_____

[5] *See also Talalai v. Cooper Tire & Rubber Co.*, 360 N.J. Super. 547, 561 (Law Div. 2001)(the CFA "was enacted to protect consumers from improper *selling practices* by 'prevent[ing] deception . . . in connection with the sale and advertisement of merchandise and real estate.'")(quoting *Fenwick v. Kay Am. Jeep, Inc.*, 72 N.J. 372, 376-77 (1977)) (emphasis added); *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 N.J. Super. 11, 22 (App. Div. 1985)("The [CFA]. . . is aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate.")(citing *Daaleman*).

[6] Joe Hand argues that the Court cannot consider the February 15th letter because Taylor's did not attach it to its counterclaim.  (Joe Hand Reply at 2-3.) (The letter was submitted in opposition to the instant motion, attached to the Certification of Taylor Mills.)
The general rule is stated in Fed. R. Civ. P. 12(d): "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

> However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.  The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint -- lack of notice to the plaintiff -- is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint.

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)(internal citations and quotations omitted).  The exception applies here.  Taylor's, the counterclaim plaintiff, submitted the letter which is incorporated into its counterclaims by reference.  Moreover, the letter is the operative document insofar as the representations in the letter are alleged to be fraudulent. (Answer at 6, ¶ 7.)  Additionally, Joe Hand does not dispute the authenticity of the document, which was created by

the letter was allegedly a threat to sue Taylor's if it did not pay Joe Hand a settlement.  Thus, the fraudulent conduct alleged was not done "in connection with" the sale or advertisement of merchandise, and the CFA does not apply.

The only alleged sale of merchandise is the purchase of UFC #80 from Joe Hand's alleged agent.[7]  However, Taylor's does not allege that Joe Hand's fraudulent conduct induced it into purchasing the program.  All of Taylor's fraud allegations stem from Joe Hand's February 15th letter, which was sent well after Taylor's had purchased UFC #80.  Joe Hand's letter was merely a product of the parties' subsequent dispute over a previous sale of merchandise.  Therefore it was not made in connection with a sale of merchandise.

This interpretation of the CFA's "in connection with" clause is consistent with precedent.  The plaintiffs in *Castro v. NYT Television* filed a CFA claim against the Jersey Shore Medical

---

its own attorney prior to this litigation.  *See Perry v. New Eng. Bus. Serv., Inc.*, 347 F.3d 343, 345 n.2 (1st Cir. 2003) ("Where, as here, a complaint's factual allegations are expressly linked to--and admittedly dependent upon--a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).")(internal citations and quotations omitted).

[7]  The CFA defines "merchandise" to include "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale."  N.J.S.A. 56:8-1.  The Court assumes without deciding that UFC #80 is "merchandise" under the CFA.

Center and Meridian Health System (the "medical defendants"), as
well as several media outlets (the "media defendants"), after the
media defendants, with the permission of the medical defendants,
filmed the plaintiffs for a television show called "Trauma: Life
in the ER."  370 N.J. Super. 282, 287-88 (App. Div. 2004).  The
plaintiffs alleged that "the media defendants fraudulently
represented that they were medical professionals in order to gain
access to plaintiffs for videotaping and then fraudulently
induced plaintiffs to execute consents to the videotaping."  *Id.*
at 295.  The court reasoned that the plaintiffs' claims did not
come within the scope of the CFA, because the plaintiffs failed
to "allege any fraud in connection with" the only consumer
transaction involved in the case-- the "medical defendants' sale
of hospital services" to the plaintiffs.  *Id.*  The court
emphasized that the plaintiffs did not allege that the medical
defendants committed fraud in order to induce the plaintiffs into
purchasing or retaining the medical defendants' services.  The
court noted that the

> [p]laintiffs do not allege, for example, that defendants
> made misrepresentations which induced them to seek
> admittance to Jersey Shore rather than to another
> hospital or to remain at Jersey Shore after their initial
> emergency treatment.

*Id.*  Despite the plaintiffs' allegations of an ongoing consumer
relationship, the court concluded that the plaintiffs

> do not state claims under the CFA for any deception,
> fraud or misrepresentation "in connection with" the sale

> of merchandise or services, because defendants' alleged
> statements and actions were not "made to induce
> [plaintiffs] *to . . . purchase*" medical services at
> Jersey Shore.

*Id.* (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 607,
691 A.2d 350, 366 (1997)) (emphasis added).

Consistent with *Castro*, the Court concludes that to state a
claim within the scope of the CFA, a plaintiff must allege facts
that establish that the alleged fraudulent conduct induced or
lured the plaintiff into purchasing merchandise or real estate.
The allegations of the counterclaim fall short of this standard
and therefore the CFA claim must be dismissed.

This Court's conclusion that the CFA does not apply is
further supported by decisions involving similar claims under
other states' consumer protection statutes.  In a series of cases
in 2003 and 2005, DirecTV, Inc. ("DirecTV") sued defendants for
allegedly purchasing and using pirating devices designed to
intercept and decrypt DirecTV's satellite signals ("DirecTV
cases").  *See, e.g., DirecTV, Inc. v. Cavanaugh*, 321 F. Supp. 2d
825 (E.D. Mich. 2003)(citing cases).  DirecTV sent letters to the
defendants, accusing them of being in possession of the illegal
signal theft devices and demanding that they pay DirecTV monetary
damages.  *Id.* at 830.  The defendants countersued DirecTV,
raising claims under their states' respective consumer fraud
statutes.  *Id.*

Many of the defendants' counterclaims were dismissed for

10

failure to state a claim.  *See, e.g., DirecTV, Inc. V. Kwanyuen*,
No. 5:03-63, 2003 U.S. Dist. LEXIS 19693, at *22 (W.D. Mich. Oct.
20, 2003).[8]  The courts concluded that any alleged fraud on the
part of DirecTV was not related to a commercial transaction,
because DirecTV did not send the letters in order to induce the
defendants into purchasing its products or services.  *See id.* at
*13.  Rather, the courts held that DirecTV was merely asserting
its legal rights.  *See id.*  For example, the Western District of
Michigan reasoned that

    [T]he [Michigan Consumer Protection Act[9]] does make clear

_____

    [8]  *But see, DirecTV, Inc. v. Milliman*, No. 02-74829, 2003
U.S. Dist. LEXIS 20938, at *16-17 (E.D. Mich. Aug. 26,
2003)(stating in dicta that the Michigan Consumer Protection Act
("MCPA") applied to the defendants' counterclaims, because
DirecTV "certainly conducted business by providing satellite
television programming to users for their personal, family, or
household use") (dismissing defendant's MCPA counterclaim on
other grounds).  Subsequent decisions have rejected the *Milliman*
court's reasoning with respect to the MCPA.  *See DirecTV, Inc. v.
Kwanyuen*, No. 5:03-63, 2003 U.S. Dist. LEXIS 19693, at *12 (W.D.
Mich. Oct. 20, 2003) ("the fact that a defendant happens to sell
consumer goods or services is not, by itself, sufficient to meet
the 'trade or commerce' requirement because the alleged violation
must occur 'in the conduct of trade or commerce.'") (quoting
Mich. Comp. Laws § 445.903(1) (2008)).

    [9]  The MCPA prohibits "[u]nfair, unconscionable, or
deceptive methods, acts, or practices in the conduct of trade or
commerce . . . ."  Mich. Comp. Laws § 445.903(1) (2008).  The
MCPA defines "trade or commerce" as

    the conduct of a business providing goods, property, or
    service primarily for personal, family, or household
    purposes and includes the advertising, solicitation,
    offering for sale or rent, sale, lease, or distribution
    of a service or property, tangible or intangible, real,
    personal, or mixed, or any other article, or a business

> that the defendant's acts must have occurred *as part of*
> *an effort to further the sale or lease of goods or*
> *services to consumers.* While DirecTV sells goods or
> services to consumers, the acts by DirecTV at issue in
> this case were not "trade or commerce," i.e., conduct
> designed to further the sale or lease of goods or
> services to consumers. Rather, DirecTV was seeking to
> enforce its legal rights against persons whom DirecTV
> believed were engaging in the illegal theft of DirecTV's
> product (television signal).

*Id.* (emphasis added).

The Western District of New York reached a similar conclusion in *DirecTV, Inc. v. Lewis*, reasoning that, under New York's Consumer Protection Law,[10]

> DirecTV's prelitigation correspondence to Militello was
> not the conduct of any business, trade or commerce or in
> the furnishing of any service in this state; it was a
> threat to sue Militello for allegedly stealing DirecTV's
> satellite signals.

No. 03-6241, 2005 U.S. Dist. LEXIS 8187, at *30 (W.D.N.Y. Apr. 29, 2005).

Although *Cavanaugh* held that the defendant's counterclaim against DirecTV did come within the scope of the Michigan Consumer Protection Act, *Cavanaugh*, 321 F. Supp. 2d at 838, the court's reasoning lends support to *Kwanyuen's* conclusion that the MCPA is aimed at preventing fraud "designed to further the sale

---

opportunity.

Mich. Comp. Laws § 445.902(g) (2008).

[10]  The NYCPL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service . . . ."  N.Y. Gen. Bus. Law § 349(a) (Consol. 2008).

or lease of goods or services to consumers." *Kwanyuen*, 2003 U.S.
Dist. LEXIS 19693, at *13.  In *Cavanaugh*, the defendant alleged
that DirecTV sent the contested letters "to force individuals to
subscribe to lengthy subscription packages as a condition for
settlement." *Cavanaugh*, 321 F. Supp. 2d at 830.  As the court
explained, the "core theory" of the defendant's counterclaim was

> that DirecTV acted improperly by sending thousands of
> generic demand letters to people suspected of signal
> theft. Cavanaugh alleges the goal of DirecTV's 'End User
> Development Group' was to coerce customers to pay
> hundreds of thousands of dollars in settlement *and to
> agree to lengthy subscription packages*.

*Id.* at 834 (emphasis added).  Furthermore, it was "undisputed"
that the defendant was a DirecTV subscriber.  *Id.* at 830.  Based
on these allegations, the *Cavanaugh* court concluded that

> a triable issue of fact exists as to whether DirecTV was
> using the demand letters in an impermissible fashion. .
> . . [T]he trier of fact could find the mass-mailing of
> generic demand letters to be an improper attempt under
> the MCPA to coerce or confuse consumers into paying fees
> or agreeing to lengthy subscriptions.

*Id.* at 839.  Unlike the defendants in *Kwanyuen* and *Lewis*, the
defendant in *Cavanaugh* actually alleged that DirecTV's fraud was
designed to further the sale of its goods and services-- the
lengthy subscription packages.

This case is analogous to *Kwanyuen* and *Lewis*, and
distinguishable from *Cavanaugh.*  Joe Hand's February 15th letter
does not offer Taylor's the opportunity to purchase a
subscription package or any other service from Joe Hand.  It

13

merely asserts that Taylor's obtained and played UFC #80 without paying for it, in violation of federal law.

Moreover, while the CFA's language differs significantly from the language of the MCPA and NYCPL, the differences strengthen the Court's conclusion that the CFA does not apply here.  Both the MCPA and NYCPL use broader language than the CFA. The MCPA and NYCPL both prohibit "deceptive practices . . . *in the conduct of . . . trade or commerce*," Mich. Comp. Laws § 445.903(1), N.Y. Gen. Bus. Law § 349(a); whereas the CFA prohibits "deception *in connection with the sale or advertisement of any merchandise or real estate*."  N.J.S.A. 56:8-2.  If claims analogous to the claim asserted here have failed under broader consumer protection laws, then it logically follows that the claim asserted by Taylor's must fail under New Jersey's narrower statute.

Thus, the Court holds that the CFA is inapplicable in the present case, because Taylor cannot allege any set of facts that if found true, would support a conclusion that Joe Hand committed fraud in connection with a consumer transaction.[11]

---

[11] Taylor's correctly notes that businesses may seek relief under the CFA.  *See, e.g., Hundred East Corp. v. Eric Shuster Corp.*, 212 N.J. Super. 350, 355 (App. Div. 1986).  However, Taylor's misses the point that the "character of the transaction, not the identity of the purchaser, determines whether the CFA is applicable." *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 560 (D.N.J. 2002).  A business may only seek relief under the CFA "when it finds itself in a consumer-oriented transaction." *Id.*  For the reasons articulated *supra*,

**B.**

The common law fraud claim must also fail because the facts pled are logically inconsistent with a finding that Taylor's relied on Joe Hand's allegedly fraudulent conduct.

Taylor's claims that Joe Hand committed common law legal and equitable fraud by seeking monetary payments from it.  (Answer at 7-8, ¶¶ 4-5.)  Specifically, the Counterclaim alleges that Joe Hand knew Taylor's had purchased UFC #80 from Joe Hand (through agents of Joe Hand), but sent the February 15th letter in an attempt to "coerce and extort" additional payment from Taylor's.  (*Id.* at 7, ¶¶ 3-4.)  The letter's allegedly false statements include the assertion that Taylor's violated Joe Hand's licensing and distribution rights by exhibiting UFC #80.  (Taylor Br., Ex. C.)  The letter further stated that Joe Hand intended to sue Taylor for $110,000, not including interest and attorney's fees, unless Taylor contacted Joe Hand in order to resolve the matter.[12]  (*Id.*)  Taylor alleges that the letter is fraudulent, because Joe Hand knew Taylor was not liable for any type of payment.  (Answer at 7, ¶ 4.)

The elements of common law fraud in New Jersey are: (1) a

---

the letter from Joe Hand to Taylor's was not a "consumer-oriented transaction."

[12]  While this statement is not alleged to be false, it is premised on the alleged misrepresentation that Taylor's violated Joe Hand's licensing and distribution rights.

material misrepresentation of a presently existing or past fact;
(2) knowledge or belief by the defendant of its falsity; (3) an
intention that the other person rely on it; (4) reasonable
reliance thereon by the other person; and (5) resulting damages.
*Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624-25
(1981).  "[A]n action in fraud may be either legal or equitable
in nature."  *Id.* at 624.  When pleading equitable fraud, a
plaintiff does not have to claim the defendant knew that the
alleged misrepresentation was false or that the defendant
intended "to obtain an undue advantage therefrom."  *Id.* at 625.
However, even when pleading equitable fraud, a plaintiff must
still plead reasonable reliance on the alleged misrepresentation.
*See DSK Enterprises, Inc. v. United Jersey Bank*, 189 N.J. Super.
242, 251 (App. Div. 1983).

     The issue is whether the facts pled sufficiently satisfy the
"reasonable reliance" prong of common law fraud.  *See generally
Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 174 (2005)
("Misrepresentation and reliance are the hallmarks of any fraud
claim, and a fraud cause of action fails without them.").  The
Court concludes they do not.

     The Court finds *Barrows v. Chase Manhattan Mortgage
Corporation* analogous to this case.  465 F. Supp. 2d 347 (D.N.J.
2006).  In *Barrows*, the plaintiff borrower sued a mortgage
corporation for fraud after the corporation demanded the

plaintiff pay excessive legal fees in connection with the
mortgage foreclosure proceedings on her home.  *Id.* at 366.
However, the plaintiff did not allege that she actually paid the
mortgage corporation any money.  The court dismissed the
plaintiff's fraud claim, because

> Plaintiff cannot prove reliance on Defendants' alleged
> false misrepresentation, and she cannot prove an injury
> as a result of that reliance.  Plaintiff claims that
> Defendants knew that their attorneys' fees and costs were
> excessive at the time they "demanded" them.  Even though
> this allegation could meet the first two elements of a
> common law fraud claim . . . Plaintiff has not alleged
> how she relied on this demanded sum to her detriment.
> Plaintiff may contend that Defendants' demand was "shady
> or underhanded," but nothing in her Complaint can be
> construed as Plaintiff having relied on that demand *since
> she never paid the requested fees*.

*Id.* at 367 (emphasis added).

Likewise, the DirecTV cases discussed above rejected the
defendants' common law fraud claims, because the defendants did
not allege that they paid DirecTV any monetary damages.  *See,
e.g., Kwanyuen*, 2003 U.S. Dist. LEXIS 19693, at *17.  In granting
DirecTV's motion for summary judgment on the defendant's fraud
claim in *Cavanaugh*, the court reasoned that

> the fact that Cavanaugh did not accept the settlement
> offer and instead sought legal advice demonstrates he did
> not rely on DirecTV's allegedly false legal statements.
> Cavanaugh undermines his claim of reliance by continually
> insisting he never engaged in signal theft.

*Cavanaugh*, 321 F. Supp. 2d at 836.

Taylor's claim of common law fraud must fail for the same
reasons elucidated in *Barrows* and *Cavanaugh*.  Although Taylor's

asserts that Joe Hand falsely accused it of stealing UFC #80 in order to extort monetary damages (i.e., facts that if proven true would amount to a knowing misrepresentation), Taylor's has not, and logically cannot, plead facts that would support a finding of reasonable reliance.  After receiving Joe Hand's February 15th letter, Taylor's apparently hired counsel who then responded to Joe Hand's accusations with its own letter, wherein Taylor's claims to have legitimately purchased UFC #80.  What's more, the letter states that the receipt evidencing payment is enclosed.[13] Accordingly, Taylor's cannot allege that it relied on Joe Hand's accusations or acquiesced in its demands for monetary damages, because according to Taylor's, it always knew the accusations to be false, and the threat to sue to be meritless.  *See Golden v. Nw. Mut. Life Ins. Co.*, 229 N.J. Super. 405, 415 (App. Div. 1988) ("A false representation made to a person who knows it to be false is not in legal estimation a fraud."); *see also* Restatement (Second) of Torts § 541 ("The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.").

Thus, the legal and equitable fraud claims fail as a matter of law.  The Motion to Dismiss the common law fraud claims will

---

[13]  The February 26th letter is specifically referenced in the Counterclaim (Answer at 6, ¶ 9) and may be considered in this Fed. R. Civ. P. 12(b)(6) motion for the reasons stated in footnote 6, *supra.*

be granted.

## IV.

For the reasons set forth above, the Court will grant Joe
Hand's Motion to Dismiss in its entirety.[14]  The Court will issue
an appropriate order.


Date:     July 30, 2008

                              s/ Joseph E. Irenas
                              **JOSEPH E. IRENAS, S.U.S.D.J.**

---

[14]  The Court will not afford Taylor's an opportunity to
amend its counterclaims because, for the reasons stated herein,
amendment would be futile.  *See Phillips v. County of Allegheny*,
515 F.3d 224, 245 (3d Cir. 2008)(directing that district courts
should give plaintiffs whose claims are subject to 12(b)(6)
dismissal an opportunity to amend their complaint unless amendment
would be futile).